**BAKER, LESHKO, SALINE & BLOSSER, LLP**
*Attorneys for Plaintiff*
**One North Lexington Avenue**
**White Plains,** New York 10601
**914.681.9500**
**Mitchell J. Baker (MB-4339)**

FILED
U.S. DISTRICT COURT
2007 AUG 27 P 4: 20
S.D. OF N.Y.
W.P.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HOPE MICKENS,

           Plaintiff,

     -against-

NEW YORK STATE DEPARTMENT
OF CORRECTIONAL SERVICES, NEW YORK
STATE DEPARTMENT OF CIVIL SERVICE,
NEW YORK STATE DEPARTMENT OF
AUDIT AND CONTROL, RONALD
BRERETON and SGT. MCCLAIN,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ROBINSON**

**JURY TRIAL**
**DEMANDED**

**07 CIV. 7621**

07 Civ.  ( )

:

:     **COMPLAINT**

:

:

:

     Plaintiff, Hope Mickens, by her attorneys, Baker, Leshko, Saline & Blosser,

LLP, complaining of the above-mentioned defendants, alleges as follows:



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
FILED:

1

### *Parties*

1. Plaintiff Hope Mickens is a citizen and resident of the County of Westchester, State of New York.

2. Prior hereto, Ms. Mickens was known as Hope Francis.

3. Defendant New York State Department of Correctional Services (hereinafter sometimes referred to as "DOC") is a department of the State of New York responsible, *inter alia*, for corrections within the State of New York.

4. Defendant New York State Department of Civil and Service and New York State Department of Audit and Control are necessary parties to this action.

5. Defendants Ronald Brereton and Sergeant McClain were at all relevant times Sergeants of the New York State Department of Correctional Facilities and were the persons who were responsible for and retaliated again Ms. Mickens as set forth below.


### *Jurisdiction*

6. This action involves the deprivation of certain rights guaranteed by the United States Constitution and federal law, an in particular Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII").

2

7.  Jurisdiction of this Court is based upon 28 U.S.C. §1331 (federal question).

8.  Venue of this Court is proper in this District pursuant to 28 U.S.C. §1391.

### *Background*

9.  Previous hereto, Ms. Mickens was employed by the defendant as a corrections officer at the Sing Sing Correctional Facility located in Ossining, New York.

10. On or about July 14, 1998, Ms. Mickens filed a complaint with the New York State Division of Human Rights under Title VII alleging that she was subjected to sexual harassment and retaliation while she was working for the DOC.

11. Subsequent to the filling of such complaint, the New York State Division of Human Rights held an evidentiary hearing before the Honorable Patricia Moro, Administrative Law Judge.

12. At such hearing, Ms. Mickens was represented by Mitchell J. Baker as her counsel.

13. Mr. Baker spent substantial time and efforts in preparing the matter for the administrative hearing, appeared at each evidentiary hearing and prepared post-hearing submissions.

3

14. After several days of hearing and submission of post-hearing memoranda, the New York State Division of Human Rights issued a Findings of Fact and Conclusions of Law, dated March 16, 2007. (A copy of such Findings of Fact and Conclusions of Law (hereinafter the "Order"), dated March 16, 2007, is annexed hereto as Exhibit "A").

15. The New York State Division of Human Rights also served upon the parties to the administrative proceeding a Notice of Order After Hearing advising that the parties that the any appeal of the Order had to be taken within sixty (60) days. (A copy of the Notice of Order after Hearing is annexed hereto also as Exhibit "A").

16. DOC did not appeal the Order within the time frame set forth above, and it has not as of the date hereof taken any steps to appeal the same.

17. Pursuant to the Order, Ms. Mickens was found to have the subject of sexual retaliation in violation of law, and the Order awarded her compensatory damages.

18. The DOC paid Ms. Mickens the amount of money set forth in the Order.

4

## *AS AND FOR A FIRST CLAIM FOR RELIEF*

19.  Ms. Mickens was the prevailing party in the administrative hearing had before the New York State Division of Human Rights.

20. Plaintiff is entitled to attorneys' fees, costs and disbursements in this action pursuant to Section 706(k) of the Civil Rights Act of 1964,  42 U.S.C. § 2000e-5(k) and the holding in *New York Gaslight Club v. Carey*, 447 U.S. 54 (1980).

WHEREFORE, plaintiff demands judgment as follows:

1.    On the first claim for relief, attorneys' fees, costs and disbursements in an amount as determined by this Court;

2.    Costs and disbursements of this action; and

3.    For such other, further and different relief this Court deems just.

Dated: White Plains, New York
        August 24, 2007

        **BAKER, LESHKO, SALINE & BLOSSER, LLP**
        *Attorneys for Plaintiff*


By: _____
        **Mitchell J. Baker (MB-4339)**
        **One North Lexington Avenue**
        **White Plains, New York 10601**
        **914.681.9500**

STATE OF NEW YORK: EXECUTIVE DEPARTMENT
STATE   DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| **STATE DIVISION OF HUMAN RIGHTS**<br>**On the complaint of**<br><br>HOPE FRANCIS,<br><br>                                   Complainant,<br>      -against-<br><br>**NEW  YORK STATE DEPARTMENT OF**<br>**CORRECTIONS, OSSINING FACILITY,**<br><br>                       Respondent,<br><br>**NEW YORK STATE DEPARTMENT OF**<br>**CIVIL SERVICE, NEW YORK STATE**<br>**DEPARTMENT OF AUDIT AND**<br>**CONTROL,**<br><br>                    Necessary Parties. | **NOTICE OF ORDER AFTER**<br>**HEARING**<br><br>**CASE No:**<br>**1252875** |

PLEASE TAKE NOTICE that the within is a true copy of an Order issued herein by the Hon. Edward A. Friedland, Executive Deputy Commissioner of the State Division of Human Rights, after a hearing held before Administrative Law Judge Patricia L. Moro.  In accordance with the Division's Rules of Practice, a copy of this Order has been filed in the offices maintained by the Division at One Fordham Plaza, Bronx, New York 10458.  The Order may be inspected by any member of the public during the regular office hours of the Division.

PLEASE ALSO TAKE NOTICE that any party to this proceeding may appeal this Order to the Supreme Court in the County wherein the unlawful discriminatory practice which is the subject of the Order occurred, or wherein any person required in the Order to cease and desist from an unlawful discriminatory practice, or take other affirmative action resides or transacts business by filing with such Supreme Court of the State a Petition and Notice of Petition within sixty days after service of this Order. The Petition and Notice of Petition must also be served on all parties, including the Division of Human Rights.

sixty days after service of this Order. The Petition and Notice of Petition must also be served on all parties, including the Division of Human Rights.

DATED:  **MAR 1 6 2007**

BRONX, NEW YORK                    STATE DIVISION OF HUMAN RIGHTS

EDWARD A. FRIEDLAND
Executive Deputy Commissioner

To:

Hope Francis
9 North James Street, Apt. M
Peekskill, New York 10566

Mitchell J. Baker, Esq.
Law Offices of Michell J. Baker
One North Lexington Avenue, 15th Floor
White Plains, New York 10601

New York State Department of Correctional Services
The Harriman State Campus, Building 2
1220 Washington Avenue
Albany, New York 12226-2050
Attention Superintendent

New York State Department of Correctional Services
The Harriman State Campus, Building 2
1220 Washington Avenue
Albany, New York 12226-2050

New York State Department of Civil Service
Alfred E. Smith State Office Building, 8th Floor
80 South Swan Street
Albany, New York 12239
Attention Patricia A. Hite

New York State Department of Civil Service
Office of Counsel
Alfred E. Smith State Office Building, 8th Floor
80 South Swan Street
Albany, New York 12239
Attention James Hennessey, Esq.

New York State Department of Audit and Control
Office of the State Controller
110 State Street, 12th Floor
Albany, New York 12236
Attention Celia M. Gonzalez, Ed.D.

Caroline J. Downey
Acting General Counsel
State Division of Human Rights
One Fordham Plaza, 4th Floor
Bronx, New York 10458

Hon. Andrew Cuomo
Attorney General
120 Broadway
New York, New York 10271
Attention Civil Rights Bureau

STATE OF NEW YORK: EXECUTIVE DEPARTMENT
STATE   DIVISION OF HUMAN RIGHTS

---

STATE DIVISION OF HUMAN RIGHTS
On the complaint of

HOPE FRANCIS,

                              Complainant,
        -against-

NEW  YORK STATE DEPARTMENT OF
CORRECTIONS, OSSINING FACILITY,

                              Respondent,

NEW YORK STATE DEPARTMENT OF
CIVIL SERVICE, NEW YORK STATE
DEPARTMENT OF AUDIT AND
CONTROL,

                              Necessary Parties.

CASE No:
1252875

---

Complainant alleged that Respondent subjected her to a hostile work environment.  Complainant also alleged that Respondent retaliated against her after she complained of the harassment.  The Division finds that Complainant has proven part of her retaliation claim and for that she is awarded $2,500 in mental anguish damages.  The evidence, however, does not support a finding of hostile work environment and that claim is dismissed.  The evidence further does not support her claim that her employment was terminated in retaliation and that claim is also dismissed.

## PROCEDURAL HISTORY

On July 14, 1998, Complainant filed a verified complaint with the NYS Division of Human Rights ("Division") charging Respondent with unlawful discriminatory practices relating to employment in violation of the Human Rights Law of the State of New York.

After investigation, the Division found that it had jurisdiction over the complaint, and that probable cause existed to believe that Respondent had engaged in unlawful discriminatory practices. Thereafter, the Division referred the case to a public hearing.

After due notice, the case came on for a public hearing before Patricia L. Moro, an Administrative Law Judge ("ALJ") of the Division.

Complainant and Respondent appeared at the hearing. Complainant was represented by Mitchell J. Baker, Esq. Respondent was represented by Leonard A. Mancini, Esq.

The parties were granted permission to submit post-hearing briefs and each was timely filed and considered.

On January 29, 2007, ALJ Moro issued a recommended Findings of Fact, Opinion, Decision and Order ("Recommended Order") for the Commissioner's consideration. No Objections to the Recommended Order were filed with the Commissioner's Order Preparation Unit.

## FINDINGS OF FACT

1.    On June 9, 1997, Complainant, a female, was appointed by Respondent New York State Department of Corrections ("DOC") as a probationary corrections officer ("CO") trainee. (ALJ's Exhibit 1; Tr. 44).

2.    DOC is a state agency which is geographically dispersed over seventy-five different locations, seventy of which are correctional facilities and five of which are administrative areas. DOC is comprised of 30,000 employees and 70,000 inmates. (Tr. 459).

3.    On July 28, 1997, Complainant was assigned as a probationary CO trainee to the Sing Sing Correctional Facility in Ossining, New York. (Tr. 45).

4.      Complainant's initial work shifts were either 7 a.m. to 3 p.m., or 3 p.m. to 11 p.m. (Tr. 48).

5.      Because she had two young children at the time, and needed to be at home during the day, Complainant sought the 11 p.m. to 7 a.m. work shift and put in a hardship application for a change to that shift. (Tr. 48-49, 201).

6.      Complainant's application was approved and she started working her desired shift. (Tr. 49).

21.     On November 12, 1997, Complainant was working her shift when Sgt. Brereton, one of the night shift supervising sergeants, told her that she should hurry up before he "slapped her" on her "big fat ass." (Tr. 50, 53-55, 128, 380).

7.      Another CO, Jerry Renau, was present when this incident occurred and heard the remark. (Tr. 55, 128, 146).

8.      Until the comment of Sgt. Brereton, Complainant believed she could "pretty much handle" comments made to her during her tenure with Respondent. (Tr. 53, 185-86)

9.      Complainant viewed the comment as sexually harassing. (Respondent's Exhibit A; Tr. 186-187).

10.     In late November or early December of 1997, Complainant's union made a formal complaint on her behalf about this incident. (Tr. 55).

11.     Complainant's schedule was changed from her regular tour of duty to the 3 p.m. to 11 p.m. work shift within seven to ten days of filing her complaint. (Tr. 58, 351, 363, 369-370).

12.     Respondent's justification for the change in Complainant's work shift was that Sgt. Brereton and another sergeant, who was also Complainant's superior, both wanted to protect

themselves against any future claims she might make against them. (Respondent's Exhibit D; Tr. 364-366, 380-382).

13.     Complainant then made a complaint about her work shift change. (Tr. 60).

14.     Complainant was returned to her regular tour of duty within five to seven days after her complaint was made. (Tr. 60, 201-202, 351).

15.     On March 18, 1998, the Superintendent of Sing Sing, Charles Greiner, was informed by DOC's Director of Diversity Management, Charlie Harvey, that after its investigation, Sgt. Brereton's comment to the Complainant was substantiated by a witness. Sgt. Brereton was to be counseled as a result of the investigation. (Respondent's Exhibit H; Tr. 65, 419-421, 441, 448-449).

16.     Despite subsequently amending the finding of its investigation to reflect that there were inconsistencies relative to the date when it occurred, Harvey nonetheless concluded that there was "probable cause to believe that Sgt. Brereton made the alleged comment" to Complainant. (Respondent's Exhibit J).

17.     Complainant had been arrested on June 4, 1997, for allegedly committing the crimes of assault in the third degree, and criminal possession of a weapon in the fourth degree. (Respondent's Exhibit U; Tr. 217).

18.     On April 20, 1998, Complainant pled guilty to the violation of harassment, in full satisfaction of the charges brought against her. (Respondent's Exhibit W; Tr. 73-76, 204, 218, 514-515).

21.     On April 27, 1998, Complainant's arrest triggered a review by DOC of her entire work record, including, "...her job performance, attendance, etc.," and necessitated a written

recommendation from the facility as to whether she was to be retained or dismissed once it

ascertained the final disposition of her criminal case.  (Respondent's Exhibit R-1; Tr. 204-207).

19.     On May 11, 1998, Superintendent Greiner, in an exercise of his discretion, requested of

DOC's Department of Personnel that Complainant's services be terminated based on four

grounds: 1) that she exhibited behavior "inconsistent with department policy, and section 2.1 of

the Rules for Employees;" 2) the fact of her guilty plea for harassment; 3) that she had eight

occasions of absences during the months of September, November and December, 1997; and 4)

that she had fourteen unspecified occasions of tardiness.  (Complainant's Exhibit 3; Tr. 70-71,

518).

20.     In addition to seeking Complainant's termination, Superintendent Greiner also requested

that Complainant's probation be extended twenty-one days pending her termination.

(Complainant's Exhibit 3).

21.     Complainant's probation was to be further extended on two occasions due to absences

and tardiness.  Those extensions were from June 18, 1998, to August 4, 1998, and from August

4, 1998, to August 26, 1998.  (Respondent's Exhibit L; Tr. 465).

22.     A DOC directive required that probationary periods for new employees could be

extended for absences, authorized or unauthorized, if in excess of a predetermined number of

workdays.  Probationary periods may be extended for absences less than the predetermined

number of workdays subject to the discretion of the Director of Personnel.  (Complainant's

Exhibit 19; Tr. 551-552).

23.     A second DOC directive outlined a disciplinary procedure that included evaluation of an

employee's time and attendance, as well as a time and attendance review process that must be

adhered to before discipline can be imposed.  However, probationary employees are not subject

to the disciplinary procedure, and probationary termination requests may be submitted "at any time" without regard to the various steps that make up the time and attendance review process. (Complainant's Exhibit 22; Tr. 136-137).

24.    Complainant's term of probation was for fifty-two weeks, absent extensions.  As a condition of employment, Complainant's services could be terminated during her probation at any time and for any reason including, among other things, unsatisfactory attendance. (Complainant's Exhibit 21).

25.    A DOC directive required that the employment of probationary employees be terminated should their conduct or performance be unsatisfactory.  Termination of employment may occur between a minimum of eight weeks and before the completion of probation.  (Complainant's Exhibit 19).

26.    On August 14, 1998, Complainant was sent a letter from DOC's Director of Personnel informing her that she was to be terminated for failing to satisfactorily complete her probationary period as a CO trainee, effective at the close of business on August 21, 1998.  (Complainant's Exhibit 14; Respondent's Exhibit L; Tr. 97).

27.    Another probationary CO at Sing Sing who did not have his employment subsequently terminated accrued eight absences in a three month period during 2001.  (Complainant's Exhibit 35; Tr. 551-556, 559).

28.    On March 24, 2003, Complainant's union grievance was denied in which she alleged that she was wrongfully terminated by Respondent.  (Respondent's Exhibit Q-3; Tr. 210-212).

DECISION AND OPINION

Complainant asserted that DOC unlawfully discriminated against her by subjecting her to a hostile work environment, and by retaliating against her.  The evidence does not support

Complainant's claim of hostile work environment, which is dismissed, but the credible evidence does support part of her claim for retaliation, which is sustained. The remaining claim that she was retaliated against when her employment was terminated is not substantiated by the record and is also dismissed.

Human Rights Law § 296.1(a), in pertinent part, makes it a violation for an employer, because of the sex of any individual, to discriminate against such individual in compensation or in terms, conditions or privileges of employment. Unlawful discrimination may include the creation of a hostile work environment.

Sexual harassment constitutes discrimination when an employee is subjected to a hostile work environment because of her gender. "A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." (internal quotations omitted). Father Belle Community Ctr. v. New York State Div. of Human Rights, 221 A.D.2d 44, 50, 642 N.Y.S.2d 739 (4th Dept. 1996) (citing Harris v. Forklift Sys. Inc., 510 U.S. 17 (1993)); see also McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 175 Misc.2d 795, 802, 669 N.Y.S.2d 122 (N.Y. Sup. Ct. 1997), appeal dismissed, 256 A.D.2d 269 (1st Dept. 1998), appeal dismissed, 93 N.Y.2d 919 (1999), leave to appeal denied, 94 N.Y.2d 753 (1999).

"Whether conduct or words are unwelcome and whether a workplace should be viewed as hostile or abusive can only be determined by considering the totality of the circumstances. In determining whether a plaintiff was subjected to a hostile work environment a court may consider the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating or a mere offensive utterance and whether it unreasonably interfered with the plaintiff's work performance." McIntyre at 803.

Sgt. Brereton's sole comment on November 12, 1997, that Complainant should hurry up before he "slapped her" on her "big fat ass" does not rise to the level of severity or pervasiveness to create a hostile work environment. Moreover, Respondent took appropriate remedial action when it was made aware of the incident. Accordingly, this claim is dismissed.

Complainant also alleged that Respondent retaliated against her for complaining to her union about Sgt. Brereton's behavior by changing her tour of duty.

The Human Rights Law makes it an unlawful discriminatory practice for an employer to retaliate against an employee because she opposed behavior she reasonably believed to be discriminatory. Human Rights Law § 296.7; *see also New York State Office of Mental Retardation and Developmental Disabilities v. New York State Div. of Human Rights*, 164 A.D.2d 208; 563 N.Y.S.2d 286 (3rd Dept. 1990).

In order to make out a prima facie case of retaliation, Complainant must demonstrate that she: 1) engaged in activity protected by Executive Law § 296; (2) Respondent was aware that she participated in the protected activity; (3) she suffered from an adverse employment action based upon her activity; and (4) there is a causal connection between the protected activity and the adverse action. Should Complainant make out a prima facie case, the burden of production shifts to Respondent to articulate a legitimate, non-discriminatory reason for its actions. Complainant then has the ultimate burden of demonstrating that Respondent's explanation is a pretext for unlawful discrimination. *Pace v. Ogden Servs. Corp.*, 257 A.D.2d 101; 692 N.Y.S.2d 220 (3rd Dept. 1999).

Complainant established a prima facie case of retaliation. She made a formal union complaint about Sgt. Brereton's comment of which Respondent was made aware. Complainant's work shift was then changed to her detriment. Finally, the proximity time between the complaint

and the changing of her shift is sufficient to find a nexus. *See Rosenblum-Wertheim v. New York State Div. of Human Rights*, 228 A.D.2d 237, 643 N.Y.S.2d 117 (1996). The change in Complainant's work shift followed days after her formal complaint.

DOC's reason for having changed complainant's work shift was not to protect her but because two of her superiors wanted to protect themselves against any future claims she might make against them. Furthermore, DOC returned Complainant to her original tour of duty within five to seven days. Because DOC changed Complainant's shift to a less desirable shift in response to her complaints about Sgt. Brereton, and furthermore, because DOC acted, not to protect Complainant, but to protect her two supervisors from complaints by her, the Division finds that DOC retaliated against Complainant for complaining to the union.

Complainant also alleged that her employment was terminated in retaliation for having made complainants against Sgt. Brereton.

Complainant again established a prima facie case insofar as she made complaints of which DOC was aware and the investigation into the termination of Complainant's employment was commenced shortly thereafter.

DOC proffered several legitimate, nondiscriminatory reasons for its decision to terminated Complainant's employment. Complainant's employment was terminated because she exhibited behavior inconsistent with department policy when she was arrested and plead guilty to harassment. Complainant was also terminated because of her unacceptable time and attendance record. Thus, taken as a whole, there were multiple reasons which caused Respondent to seek the termination of Complainant's employment.

Complainant argued that the discretion to seek her termination was unreasonably exercised given that another CO with a similar time and attendance record did not have his

employment terminated.  Complainant, however, failed to demonstrate that the comparator also plead guilty to harassment.  Since that combined with her time and attendance record formed the basis of the decision to terminate her employment, she is not similarly-situated to the named comparator.

Accordingly, Complainant's claim that Respondent discriminated against her by terminating her employment is dismissed.

Complainant is entitled to damages for the mental anguish she suffered as a result of the sustained retaliation complaint.  *Cosmos Forms, Ltd. v. New York State Division of Human Rights*, 150 A.D.2d 442, 541 N.Y.S.2d 50 (2d Dept. 1989).  Such compensation may be solely based on a Complainant's testimony.  *Id.* at 442.  It must, however, be reasonably related to a respondent's discriminatory conduct.  *Quality Care v. Rosa*, 194 A.D.2d 610, 599 N.Y.S.2d 65 (2d Dept. 1993).

Here, the record shows that the change in Complainant's work shift lasted for merely several days until she was immediately returned to her regular tour of duty.  As such, any injury to her was de minimis and damages in the amount of $2,500 will sufficiently compensate her for the hardship she experienced at that time.  *New York State Dept of Correctional Servs. v. State Div. of Human Rights*, 207 A.D.2d 587, 616 N.Y.S.2d 499 (3d Dept. 1994)(female CO had mental anguish award reduced to $2,500 in the absence of any evidence concerning the duration of her condition, its severity or consequences, or that fact that medical treatment was not sought).

## ORDER

Based on the foregoing, and pursuant to the provisions of the NYS Human Rights Law, and the Rules of Practice of the Division, it is

ORDERED that DOC, its agents, representatives, employees, successors and assigns shall cease and desist from retaliating against its employees; it is further

ORDERED that DOC, its agents, representatives, employees, successors and assigns shall take the following affirmative action to effect the purposes of the NYS Human Rights Law:

1.      Within sixty days from the date of the Commissioner's Final Order, DOC shall pay to Complainant damages for mental anguish and humiliation, without any deductions and withholding whatsoever, in the amount of $2,500. Interest shall be awarded on that amount at a rate of nine percent per annum from the date of this Order until the date payment is made.

2.      The aforesaid payment shall be made by Respondent in the form of a certified check made payable to the order of Complainant and delivered to Complainant's counsel, Mitchell J. Baker, Esq. at his office address, One North Lexington Avenue, White Plains, NY 10601, by registered mail, return receipt requested.

3.      Respondent shall simultaneously furnish written proof to Caroline J. Downey, Esq., Acting General Counsel of the New York State Division of Human Rights, at her office address, One Fordham Plaza, 4th Fl., Bronx, New York 10458, of its compliance with the directives contained in this Order and shall cooperate with the representatives of the Division during any investigation into its compliance with the directives in this Order.

DATED:   MAR 1 6 2007

BRONX, NEW YORK                                  STATE DIVISION OF HUMAN RIGHTS

                                                 EDWARD A. FRIEDLAND
                                                 Executive Deputy Commissioner